HALL v. SHOEMAKE.  (No. 6946.) †

(Court of Civil Appeals of Texas. Galveston. June 2, 1915. Rehearing Denied June 24, 1915.)

1. APPEAL AND ERROR ☞764—BRIEFS—RULES OF COURT.

A brief, typewritten in single space on thin tissue paper, and hence almost unreadable, is in direct violation of Rules for Courts of Civil Appeals 29, 37 (142 S. W. xii, xiii), regulating the preparation of briefs.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3099; Dec. Dig. ☞764.]

2. ADVERSE POSSESSION ☞112—BURDEN OF PROOF.

In trespass to try title, the burden of proof is on a defendant, relying upon title by adverse possession, to prove facts giving such title.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 651, 653, 654, 657–659, 661–663, 665, 666; Dec. Dig. ☞112.]

3. ADVERSE POSSESSION ☞114—SUFFICIENCY OF EVIDENCE.

In trespass to try title, where defendant set up title by adverse possession, evidence *held* insufficient to show such possession and use by defendant's predecessor as would give him and his successors title under the statute.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 682, 683, 685, 686; Dec. Dig. ☞114.]

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

† Writ of error pending in Supreme Court.

Appeal from District Court, Nacogdoches County; L. D. Guinn, Judge.

Action by B. M. Hall against R. S. Shoemake. Judgment for defendant, and plaintiff appeals. Reversed, and judgment rendered for plaintiff.

June C. Harris and Audley Harris, both of Nacogdoches, for appellant. V. E. Middlebrook, of Nacogdoches, for appellee.

LANE, J. On the 27th day of September, 1848, the board of land commissioners of Nacogdoches county, Tex., issued a headright certificate to B. M. Hall. On the 28th day of March, 1853, H. H. Edwards, administrator of the estate of Chas. Chevallier, filed an inventory of the properties of said estate, and among the items of property listed was the certificate issued to B. M. Hall above mentioned. On the 5th day of August, 1857, said administrator, by virtue of an order of the probate court of Nacogdoches county, theretofore made, sold, and conveyed in writing, the headright certificate issued to B. M. Hall to L. S. Roberts. This conveyance was properly recorded in the deed records of Nacogdoches county, where the land in question is located, and where B. M. Hall, Sr., resided until his death, and where B. M. Hall, plaintiff in this suit, has resided since 1848. On the 29th day of October, 1857, L. S. Roberts, the assignee of Edwards, conveyed said certificate to James R. Arnold, which conveyance was also recorded in said county. On October 29, 1857, James R. Arnold, assignee of Roberts, conveyed to T. J. Collins, of Nacogdoches county, the whole of the land located by virtue of said certificate issued to Hall, which said deed of conveyance was also recorded in the deed records of said county. On the 13th day of June, 1859, after the execution of the above-mentioned instruments, and after the certificate in question had been transferred by Edwards to Roberts, and by Roberts to Arnold, and by Arnold to Collins, H. R. Runnells, Governor of Texas, patented to "B. M. Hall, his heirs or assigns" 419$^1$/$_{10}$ acres of land lying in Nacogdoches county, reciting in said patent that the same was for the unlocated balance of the headright certificate issued to B. M. Hall on the 27th day of September, 1848. On the 9th day of January, 1860, T. J. Collins by deed conveyed to Jessie H. Muckleroy 50 acres of land described as follows:

"Said 50 acres is taken out of the N. E. corner of my tract of land located by virtue of headright certificate issued to B. M. Hall, lying in Nacogdoches county about 10 miles S. W. of the town of Nacogdoches, and is bounded on the north by Aleck Ramsey, on the east by Joseph or John Tisdale, and on the west by E. Young tract of land."

Prior to the execution of this last-named deed Collins had conveyed 190 acres out of the north end of said Hall 419$^1$/$_{10}$-acre survey to one Ramsey or Rambin, and about 100 acres out of the eastern part of said survey

to one Tisdale. The E. Young tract mentioned in said deed is located just west of the 50 acres conveyed to Muckleroy. The Muckleroy tract is the same land which was conveyed by Acosta to Henry Young, the former husband of Mrs. Grim, through whom appellee Shoemake claims, which said tract will be more fully described hereafter. On the 13th day of October, 1864, T. J. Collins by deed conveyed to James L. Smith the whole of the B. M. Hall land patented in 1857, except those tracts theretofore conveyed to Ramsey, Tisdale, and Muckleroy, said balance being about 115 or 120 acres. On the 17th day of November, 1869, M. A. Acosta conveyed to Henry Young, former husband of Mrs. Grim, the assignor of appellee Shoemake, 50 acres of the Hall headright, described as follows:

"Bounded on the north by Aleck Ramsey, on the east by Joseph or John Tisdale, and on the west by E. Young, being the same land sold by Collins to Muckleroy. Henry Young built his residence in the north corner of this tract about the year 1872, and lived thereon until his death. He also built a mill or gin thereon, and made other improvements thereon. Such title to the land in controversy as passed to Smith by deed from Collins passed by mesne conveyances to appellant, B. M. Hall. That the description and location of the various tracts of land mentioned herein may be better understood we attach hereto a small plat, showing their respective locations, and also showing the location of the former residence and mill of Henry Young, deceased, and also the house known as the Archer place.

On the above plat the tracts of land and other objects necessary to be located are shown as follows: The B. M. Hall 419$^1$/$_{10}$ acre survey beginning at A runs N. 9° E. 1,923 varas to B; thence W. 1,270$^7$/$_{10}$ varas to C;

thence S. 1,579$^7$/$_{10}$ varas to D; thence W. 670$^3$/$_{10}$ varas to E; thence S. 23 varas to F; thence W. 81 varas to G; thence S. 269$^7$/$_{10}$ varas to H; thence E. 1,721 varas to beginning A. The corners of the Ramsey tract are designated by the letter R; the corners of the Tisdale by the letter S; the E. Young by the letter T; the Henry Young 50 acres by the letter X; the house of Henry Young by the letter Y; his mill by the letter M; the Archer house by the letters EY; and the land sued for by the dotted lines.

Appellant B. M. Hall instituted this suit in the district court of Nacogdoches county on the 22d day of August, 1911, in the ordinary form of trespass to try title to recover from appellee R. S. Shoemake the land described in his petition, shown by the dotted lines on the plat attached hereto, containing about 115 acres. By his original petition he sues for himself and in behalf and for his brothers and sisters. Appellee Shoemake answered: First, by plea of general denial and not guilty; second, by asserting title to the land sued for in fee simple; and, third, that he had title thereto under the statutes of limitation of 5 and 10 years. By his supplemental petition appellant pleaded coverture and minority for his brothers and sisters in avoidance of appellee's plea of limitation. The case was tried before a jury, a verdict returned for appellee, R. S. Shoemake, and judgment entered accordingly.

[1] Appellant presents for our consideration 23 assignments of error, but few of which are followed by statements in their support, and we are referred to the statement of facts, containing about 100 pages, for information. Appellant's brief is typewritten in single space on thin tissue paper and for that reason is almost unreadable. Briefs prepared in this manner are in direct violation of rules 29 and 37 for the Courts of Civil Appeals (142 S. W. xiii), and we take this opportunity to advise counsel that the rules referred to should be followed in the future.

The view we take of this case renders it unnecessary for us to take up and dispose of appellant's numerous assignments in his brief, in the order they are therein presented.

The theory of the case, as presented by appellant Hall, is: First. That the headright certificate by virtue of which the land in controversy was located and patented was issued to B. M. Hall, deceased; that said Hall had never transferred said certificate, nor the land patented thereunder, and therefore appellant, Hall, and his brothers and sisters, to wit, Laura, Bendly, S. H. Hall, Martha Hall Dickinson, T. H. Hall, Elizabeth Kemper, Henry Hall, M. W. Hall, William Hall, Emma Whitehead, Roy Hall, Ida Hall, Beaulah Hall, and Jane Dickinson, the heirs of B. M. Hall, deceased, were owners of said land. Second. That if B. M. Hall did transfer the certificate to Chas. Chevallier before his death and the land was located and patented to the transferee, appellant is the owner of said land, as he purchased it from the assignees of said Chevallier into whom the title had passed long before the sale to one Henry Young by Collins is claimed to have been made. Third. That neither Henry Young, nor any one for him or holding under him, has had and held possession and use of any part of the land in controversy for such time as would give appellee title under the statute of limitation. The theory of appellee is: First, that B. M. Hall, deceased, before his death, transferred his said certificate to one Chas. Chevallier, and that through this transfer the title to the land in controversy passed into T. J. Collins, and that said Collins in or about the year 1872 sold and conveyed the same to Henry Young, deceased, and that he, appellee, purchased the same from Young's widow, who is now Mrs. Grim; second, that he and those under whom he holds have had and held such possession and use of the land as would give him title by limitation.

After a most careful examination and study of the evidence we have reached the conclusion that the undisputed evidence shows that T. J. Collins, through whom appellant Hall claims legal title, independent of his claim as an heir of B. M. Hall, deceased, on the 13th day of October, 1864, by deed, which is duly recorded, conveyed the land in controversy to James L. Smith; that Henry Young through whom appellee claims, bought from one Acosta a certain 50 acres of land, a part of the B. M. Hall survey, shown on the plat attached hereto, and that he moved to, and lived thereon, from about the year 1872, in his house shown by the plat, until his death in 1890, and from 1872 he never lived at any other place; that not until some years after he bought said 50 acres did he, or any one for him, claim that he had purchased and had conveyed to him any portion of said Hall survey except the said 50 acres upon which he lived, but all evidence introduced by appellee shows that if Henry Young ever purchased any portion of the Hall survey from Collins, such purchase was not until after the year 1872, and long after T. J. Collins, from whom it is claimed he bought, had conveyed all of said land to J. L. Smith in 1864, through whom appellant claims. It is therefore evident that appellee is not entitled to recover upon his claim of title by purchase from Henry Young's widow.

If it be conceded that the certificate which was issued to B. M. Hall, Sr., was never transferred to Chas. Chevallier, and through his administrator, H. H. Edwards, to T. J. Collins, then appellant, Hall, holds the legal title to the land in controversy as an heir of B. M. Hall, Sr., deceased. On the other hand, if it be conceded that said certif-

icate was so transferred, and that the title to said land thereby. passed to T. J. Collins, then in that event, appellant Hall holds the legal title to the same, as he holds under the assigns of Collins, who purchased the land. as evidenced by a deed duly recorded, in 1864, 5 or 6 years prior to the time it is claimed by appellee that Collins sold the same, or any part thereof, to Henry Young, through whom he claims.

[2, 3] Since the undisputed evidence shows that appellant has title to the land in controversy, he must recover the same, unless appellee has shown that he has title under the statute of limitation, and the burden rests upon him to show such facts as would give him such title before he can recover. Has he made such proof? The undisputed evidence shows that E. Young, was the father of Henry Young, under whom appellee claims title to the land in controversy; that E. Young and wife owned the land upon which the Archer house and inclosures in connection therewith is situated, which is no part of the Hall survey of $419\frac{1}{10}$ acres; that at the time he died he left surviving him his wife, the mother of Henry Young; that Henry Young built or caused to be built, the Archer house, but for whom the house was built, or that Henry Young ever owned the Archer premises, is not shown. It is shown that a man by the name of Archer lived in the Archer house for about 2 years, that when he moved out some other persons moved in and lived there for 1 year; that when he moved out others moved in; that some four or five 'different persons lived in the Archer house altogether for 10 years or more; that during this time some one of the occupants inclosed a small field in connection therewith, which encroached upon the land in controversy, inclosing about 2 or 3 acres of the same; but it is not shown that these various persons were the tenants or agents of Henry Young. It was shown that said Young took timber for rails and sawlogs from the land in controversy. This is substantially all the proof made in support of appellee's plea of limitation. Such proof, we think, wholly fails to show such possession and use of any part of the land in controversy by Henry Young as would give him, or those holding under him, title to the land under the statute of limitation.

It follows, therefore, that as appellant has shown by undisputed evidence that he is the owner of said land, and appellee has failed to prove title under the statute of limitation pleaded by him, the court below should have instructed a verdict for appellant; and, it further appearing that all the facts in connection have been fully developed, we here reverse the judgment of the lower court and here render judgment for the appellant.

Reversed and rendered.